(170 App. Div. 230)

CONWAY v. NAYLOR et al.

(Supreme Court, Appellate Division, Second Department.   December 17, 1915.)

1. MASTER AND SERVANT ⬚236—INJURIES TO SERVANT—CONTRIBUTORY NEG-
   LIGENCE.
   Where plaintiff, who had placed an iron collar around a shaft, knew
   of a projecting set screw, plaintiff's failure to use care in making measure-
   ments above the shafting, which was in motion, cannot be excused on
   the ground of temporary concentration of mind, producing momentary for-
   getfulness, and must be deemed contributory negligence, barring recovery
   for injuries resulting from being caught by the screw.
        [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681,
   723–742;  Dec. Dig. ⬚236.]

2. APPEAL AND ERROR ⬚1175—DETERMINATION.
   Where the facts established plaintiff's contributory negligence, war-
   ranting nonsuit, the complaint will on defendant's appeal be dismissed,
   under Code Civ. Proc. § 1317, authorizing the appellate court to reverse or
   affirm or modify the judgment order appealed from.
        [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–
   4587;  Dec. Dig. ⬚1175.]

Appeal from Trial Term, Westchester County.

Action by Evander Conway against George Naylor, Jr., and John
Naylor, copartners.   From a judgment for plaintiff, and an order
denying new trial, defendants appeal.   Reversed, and complaint dis-
missed.

See, also, 166 App. Div. 904, 150 N. Y. Supp. 1082.

Appeal by defendants from a judgment for plaintiff, entered April 12, 1915,
upon a verdict for $6,500 for personal injuries after a trial at the Westchester
County Trial Term;  also from an order denying defendants' motion for a
new trial.   Plaintiff is suing his employers, for whom he had worked 18 years.
Defendants were accustomed to send him out to assemble and set up brick ma-
chinery which they manufactured, to be installed at different brickyards.
For 5 years plaintiff had been engaged on these special machines.   Defendants
contracted to put up a mixer machine at a brickyard near Beacon.   In this
yard such machines take their power from horizontal shafting of about 3
inches diameter, running 8 or 10 feet above the ground, leading out from a
central power plant.   Each separate machine connects with this shafting by
a countershaft with a friction clutch having two gears.   In the old machin-
ery, which defendants took down, was an iron collar for this shaft;  its pur-
pose being to stop the lever from sliding past it.   This old collar was taken
away by defendants, and bored out and shipped back, to be put on the extend-
ed shafting for the new machine.   The collar went around the shaft, in two
halves, clamped together by two set screws.   On Thursday, 2 days before this
accident, as plaintiff attached this collar, he found that a set screw which
came with it, even when screwed in tightly, projected five-eighths of an inch
above the collar's surface.   He pointed this out to one Cite, defendants' super-
intendent, who said to-morrow he would send other screws, but to go on with
the work.   On Friday the screws did not come, but there was some talk with
Cite, who asked plaintiff to have job finished Saturday;  he also promised
plaintiff he would ask the brickyard foreman not to put on the power while
plaintiff was finishing the installation.   But at 7 a. m. Saturday the yard
plant started up, and kept this shafting, collar and all, turning with this
set screw still in the condition it had been since Thursday.   The foreman re-
fused plaintiff's request to stop, saying he must be making brick.

After plaintiff had done other finishing work, he had to measure above this
shafting for placing the friction lever for connecting the power with the new

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

machine. With a helper, he put up a plank platform about 5 or 6 feet above the ground, and about 2½ feet beneath this collar. To take these measurements plaintiff got on this platform he had erected, standing sideways toward the main shafting, which was about a foot or 6 inches away. The clutch was at plaintiff's front, and this set screw about a foot in his rear. By an inadvertent motion, probably turning and bending over, his trowsers were caught in this set screw, whirling him about the shaft, and then throwing him to the ground, injuring the right leg, so that it was amputated below the knee.

On the first appeal it was held that plaintiff was negligent, having himself set up the collar with the projecting screw, and connected the shafting and erected the platform, so that he knew of this danger. The judgment was then reversed, and a new trial granted. 166 App. Div. 904, 150 N. Y. Supp. 1082. On this second trial respondent claimed that he was absorbed in making these measurements, which induced a concentration of mind, which produced "momentary forgetfulness" of his peril.

Argued before CARR, STAPLETON, MILLS, RICH, and PUTNAM, JJ.

Thomas F. Curran, of Yonkers, for appellants.
Sydney A. Syme, of Mt. Vernon, for respondent.

PUTNAM, J. [1] The testimony upon the second trial, from the plaintiff himself, that his attention was so centered on his measuring that he did not think of the revolving set screw behind him, does not change plaintiff's rights. His learned counsel, in support of the doctrine of "momentary forgetfulness," cites Palmer v. Dearing, 93 N. Y. 7, 11, where one was passing down a stairway in a tenement house, and Larsen v. Lackawanna Steel Co., 146 App. Div. 238, 240, 130 N. Y. Supp. 887, a failure to guard set screws.

But the case at bar is not one for the doctrine that allows for the tendency of continued routine to deaden by familiarity the effect of earlier warnings, such as dangers along one's daily pathway (Thompson on Negligence, § 6266), or the liability to forego earlier precautions, after one has been long and continuously absorbed in new duties. Plaintiff had himself clamped on this collar, and had noted its obvious peril. There was nothing we can hold to be adequate to dim or obliterate his perception of what stood in plain sight. It was not during the monotony of the round of daily duty, but as a special approach for a brief and single purpose, that he got up beside this revolving screw. It was not an act in panic, or compelled by a sudden emergency. There was, therefore, no legal ground to excuse or palliate his forgetfulness. While courts and juries have excused an inadvertent step in places which the person had known to be defective, such prior knowledge was slight, or remote in time, and faded from the mind, or there was an allowable presumption that the danger had been removed, of which there had been some promise. As was said by Thomas, J.:

"No one would ever be negligent, if it were sufficient to forget." Brown v. Associated Operating Co., 165 App. Div. 702, 704, 151 N. Y. Supp. 531.

[2] The judgment and order must therefore be reversed, with costs; and, as the facts at the trial established contributory negligence, warranting a nonsuit, the complaint should be dismissed, under Code of Civil Procedure, § 1317, with costs. All concur.